IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

WALNUT HILL ESTATE ENTERPRISES, )
LLC; JONOTHAN BENEFIELD; and JULIE )
BENEFIELD,                         )      2:09-cv-00500-GEB-GGH
                                   )
             Plaintiffs,           )      ORDER GRANTING DEFENDANTS'
                                   )      MOTION FOR SUMMARY JUDGMENT
       v.                          )      AND DECLINING TO EXERCISE
                                   )      SUPPLEMENTAL JURISDICTION OVER
CITY OF OROVILLE; DAVID GOYER;     )      PLAINTIFFS' REMAINING STATE
BECKY FRASER; RAY SANDOVAL; and    )      LAW CLAIM*
CHRIS GAIL,                        )
                                   )
             Defendants.           )
                                   )

        Defendants City of Oroville, David Goyer, Becky Fraser, Ray

Sandoval, and Chris Gail ("Defendants") move for summary judgment on

all of Plaintiffs' claims in their First Amended Complaint ("FAC").[1]

Plaintiffs allege in their FAC that Defendants violated their

constitutional rights when they conducted health and safety code

inspection searches of Plaintiffs' business and subsequently issued

Plaintiffs a "Notice to Repair or Demolish the Substandard Building."

---

        *   This matter is deemed suitable for decision without oral
argument.  E.D. Cal. R. 230(g).

        [1]   The individual Defendants also argue they are entitled to
qualified immunity.  However, since these Defendants prevail on their
summary judgment motion, the qualified immunity issues are not reached.

1

## I.  Background

Plaintiffs Jonothan Benefield and Julie Benefield (collectively, "the Owners") are the managing members of Plaintiff Walnut Hill Estate Enterprises, LLC ("Walnut Hill").  (Statement of Undisputed Facts ("SUF") ¶ 1.)  Walnut Hill owns the Oroville Inn, which is located in downtown Oroville, California.  (Id.)

Oroville City Interim Fire Marshall Chris Gail ("Gail") and Code Enforcement Officer David Goyer ("Goyer") went to the Oroville Inn on December 16, 2008 after Interim Fire Chief Les Bowers ("Bowers") informed Gail that the Inn was in "very poor condition and should be inspected for safety reasons."  (Id. ¶ 3.)  Bowers spoke to Gail after Bowers and his crews had responded to a fire alarm at the Inn on the morning of December 16, 2008, at which time Bowers observed the poor conditions and that the residents of the Inn did not evacuate the building despite "an audible alarm sounding when his crews arrived at the building . . . ."  (Id. ¶ 2.)  Gail and Goyer met with the Oroville Inn maintenance man and observed "several code violations" before they were asked to leave the premises.  (Id. ¶ 3.)  Goyer "issued a Notice of Violation for the violations they observed and set January 2, 2009 as the date for re-inspection."  (Id.)

The Owners refused to allow Gail and Goyer into the Oroville Inn on January 2, 2009.  Goyer then filed an "Affidavit for Inspection Warrant" in the Butte County Superior Court on January 7, 2009.  (SUF ¶ 4; Ex. 1 of Defendants' Unopposed Request for Judicial Notice ("RJN"), which is granted.)  On January 7, 2009, Butte County Superior Court Judge William Lamb issued "an Inspection Warrant authorizing City staff to enter upon and inspect the interior and exterior of the Oroville Inn."  (SUF ¶ 5.)  Plaintiffs "filed an ex parte application

to quash and/or limit the scope of the Inspection Warrant" on January 8, 2009, which City Attorney, Dwight L. Moore opposed on January 9, 2009. (Id. ¶¶ 6, 7.)  Judge Lamb held a hearing on January 9, 2009, at which Plaintiffs' application to quash the warrant was denied. (Id. ¶ 8.)

Goyer submitted his "Return on Inspection Warrant" to the Butte County Superior Court on January 30, 2009, which included a twenty-four page list of hundreds of health and safety code violations Goyer discovered while inspecting the Oroville Inn.  (Moore Decl. Ex. 3, Ex. E.)  The "Return on Inspection Warrant" also listed twenty-three apartments which "were not inspected after being provided a 24-hour notice, because the occupants did not make their apartments available for inspection."  (Id.)  Judge Lamb issued an additional inspection warrant on February 4, 2009, authorizing forcible entry into these apartments.  (SUF ¶ 9; Gail Decl. Ex. 5.)  City staff gave the Owners and tenants advance written notice of each inspection. (SUF ¶ 10.)  On April 22, 2009, the Owners were given a "Notice to Repair or Demolish the Substandard Building", and were advised that their failure to comply may result in a civil enforcement action. (Id. ¶ 11.)

Plaintiffs challenge in their FAC, filed on May 13, 2009, the inspections "[c]ommencing on January 9, 2009," and the April 22, 2009 "Notice to Repair or Demolish the Substandard Building."  (FAC ¶ 8.)  Plaintiffs allege the inspections violated their Fourth Amendment rights and were conducted in retaliation for Plaintiffs asserting their First Amendment right in an an earlier filed lawsuit.  (Id. ¶ 12(a), (b).)  Plaintiffs also allege the inspections and Notice violated their procedural and substantive due process rights and their

3

"rights to be secured from a taking." (Id. ¶ 12(c), (d).)  Plaintiffs further allege the City of Oroville has policies, practices, and customs which foster, promote, condone the constitutional violations to which they were subjected. (Id. ¶ 19.)  Plaintiffs also seek a writ of mandate under California Code of Civil Procedure section 1094.5. (Id. ¶ 21.)

## II.  Legal Standard

The movant for summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).  If the movant satisfies this burden, "the non-moving party must set forth, by affidavit or as otherwise provided in Rule 56 [of the Federal Rules of Civil Procedure], specific facts showing that there is a genuine issue for trial." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (quotations, citation, and emphasis omitted).  "All reasonable inferences must be drawn in favor of the non-moving party." Bryan v. McPherson, 590 F.3d 767, 772 (9th Cir. 2009).

## III.  Analysis

### A.  Fourth Amendment Claims

Defendants seek summary judgment on Plaintiffs' Fourth Amendment claims, arguing the inspection searches "were pursuant to valid inspection warrants." (Mot. 5:12-15.)  Plaintiffs rejoin, arguing the warrants were "not supported by probable cause," were "unparticularized," and that Defendants exceeded the scope of the inspection warrants when they executed the inspections. (Opp'n 3:28, 5:1-3, 6:19.)

1     "[T]he Fourth Amendment's prohibition against unreasonable
2  searches applies to administrative inspections of private commercial
3  property." Donovan v. Dewey, 452 U.S. 594, 598 (1981).  However,
4  "[p]robable cause in the criminal law sense is not required.  For
5  purposes of an administrative search . . ., probable cause justifying
6  the issuance of a warrant may be based . . . on specific evidence of
7  an existing violation . . . ." Marshall v. Barlow's, 436 U.S. 307,
8  320 (1978).  "Where considerations of health and safety are involved,
9  the facts that would justify an inference of 'probable cause' to make
10  an inspection are clearly different from those that would justify such
11  an inference where a criminal investigation has been undertaken."
12  Camara v. Mun. Court of City and Cnty. of San Francisco, 387 U.S. 523,
13  538 (1967).  "This lower standard of administrative probable cause may
14  be 'met by a showing of specific evidence sufficient to support a
15  reasonable suspicion of violation.'" In re Inspection of 526 Catalan
16  St., 741 F.2d 172, 174-75 (8th Cir. 1984) (quoting W. Point-Pepperell,
17  Inc. v. Donovan, 689 F.2d 950, 958 (11th Cir. 1982)).

18     Here, Goyer described in his affidavit supporting his
19  request for a state court issued inspection warrant the health and
20  safety code violations he personally observed at the Oroville Inn on
21  December 16, 2008, including the following: an electrical conduit
22  pulled away from the wall, cracked and chipped weather proofing, dry
23  rot around exterior doors, broken windows, defective emergency exit
24  signs, a missing sewer cleanout cap, a disassembled electrical grill
25  in the hallway, external fire systems connections lacking maintenance,
26  ceiling leaks, large piles of household debris, a pile of carpet
27  soaked with water leaking from the ceiling, and problems with the
28  elevator.  (RJN Ex. 1.)  Goyer concluded, "Based on my observations of

the Property, I believe that an inspection of the Property is
necessary to enforce the City Code and protect the health and safety
of the Property's occupants and guests."  (Id.)

Plaintiffs have not controverted this evidence, and have
therefore failed to raise a genuine issue of material fact that the
inspection warrants issued on January 7 and February 4, 2009 were
unsupported by "specific evidence of [] existing [code] violation[s]"
and thus lacked "probable cause justifying the issuance of [the]
warrant[s]."  Marshall, 436 U.S. at 320.

Plaintiffs also argue the inspection warrants are "so open
ended" that they can "only be described as [] general warrant[s]."
(Opp'n 4:105.)  Whether an inspection warrant has "proper scope" is
"determined by considering the information presented to the [court] in
the warrant application."  In re J.R. Simplot Co., 640 F.2d 1134, 1138
(9th Cir. 1981).  The court considering the application for an
inspection warrant may "properly draw reasonable inferences from [the]
information" presented.  Id.  "If evidence is presented to the court
that the deleterious conditions may be present throughout the
facility, a warrant authorizing a full plant-wide inspection is
justified."  Salwasser Mfg. Co. v. Occupational Saf. & Health Appeals
Bd., 214 Cal. App. 3d 625, 634 (1989) (citing Donovan v. Fall River
Foundry Co, Inc., 712 F.2d 1103, 1108 (7th Cir. 1983)).  Goyer's
affidavit described multiple health and safety code violations he
personally observed.  Additionally, Goyer included in his affidavit
Interim Fire Chief Bowers' statement that the property needed to be
inspected due to its "blighted conditions" and the maintenance man's
statement to Goyer that "he knew of many other maintenance problems
with the Property."  Goyer requested in his affidavit a warrant to

inspect "[t]he entire property . . ., including interior and exterior
inspections of all the residential and commercial units, offices,
common areas, roof, basement and mechanical room, in order to inspect
for violations of the City of Oroville Building, Fire, Zoning, Housing
and Health Ordinances . . . ."  The state court authorized warrants to
inspect the areas Goyer sought to inspect based on the observations
contained in Goyer's affidavit and Goyer's subsequent "Declaration in
Support of Return on Inspection Warrant."  Plaintiffs have not
controverted Defendants' evidence with evidence creating a genuine
issue of material fact that the scope of the inspection authorized by
the warrants was "unreasonable."  <u>Simplot</u>, 640 F.2d at 1138; <u>see</u>
<u>People v. Wheeler</u>, 30 Cal. App. 3d 282, 297-99 (1973) (upholding
rejection of similar particularity challenge to an inspection warrant
obtained under California Code of Civil Procedure sections 1822.50 *et*
*seq.* for the inspection of a 315-acre ranch with over 100 structures,
77 of which were occupied, for possible health and safety code
violations; the warrant described the place to be searched as "19100
Coleman Valley Road used as the residence of William and Sarah Wheeler
and other structures" and was supported by an affidavit showing
potential health and safety code violations).

      Plaintiffs further argue that the inspections were
"manifestly excessive in scope."  (Opp'n 6:19.)  Plaintiffs present
the declaration of Jonothan Benefield in support of this argument, in
which Benefield avers "the police threatened [him] with physical
arrest by means of force . . . if [he] interfere[d] with the search."
(Benefield Decl. ¶ 18.)  However, this conclusory averment lacks
factual context and is controverted by the DVD Defendants submitted
which contains a video recording of a portion of the January 9, 2009

search.  (Moore Decl. ¶ 5, Ex. 1.)  The video recording shows City officials accompanied by a uniformed deputy sheriff officer served the inspection warrant on Benefield in the presence of Benefield's attorney, Frear Stephen Schmid; and, depicts Schmid shouting a tirade of profanities at City officials involved with executing the inspection warrant.  The video also shows that a City official informed Benefield that any person interfering with the inspection would be subject to arrest.  Even if the deputy sheriff officer later warned Benefield that he could be arrested if he interfered with the search, this mere warning has not been shown unlawful in light of California Code of Civil Procedure section 1822.57, which prescribes that "[a]ny person who willfully refuses to permit an inspection lawfully authorized by warrant issued pursuant to this title is guilty of a misdemeanor." see also Camara, 387 U.S. at 531 ("refusal to permit an inspection is itself a crime").

Plaintiffs also challenge Defendants' entry into private apartments.  However, the January 7, 2009 warrant specifically authorized "the inspection of the interior of the residences."  The uncontroverted evidence shows that Defendants entered private apartments under the January 7, 2009 warrant only after they obtained consent from the tenants.  (Moore Decl. Ex. 3 (stating that apartments "were not inspected because the tenants did not provide access"); Id. Ex. E.)  Defendants' evidence also shows that after the "Return on Inspection Warrant" revealed a multitude of health and safety code violations in the apartments searched, including exposed wiring, lack of hot and cold running water, lack of heating, water intrusion through exterior walls and ceiling, emergency escape window problems, pest infestation, and general dilapidation, Defendants obtained a

warrant on February 4, 2009, authorizing forcible entry to inspect the remaining apartments.  (Moore Decl. Ex. 3, Ex. E.)  This warrant was obtained under California Code of Civil Procedure Section 1822.56, which prescribes that "the judge may expressly authorize a forcible entry."  Since Plaintiffs have not countered Defendants' evidence with evidence sufficient to permit drawing a reasonable inference that Defendants' execution of the two inspection warrants was "excessive," Defendants' motion for summary judgment on Plaintiffs' Fourth Amendment claims is granted.

**B.    Retaliation Claim**

Defendants also seek summary judgment on Plaintiffs' retaliation claim, arguing Plaintiffs have failed to "establish a link between the alleged retaliatory conduct of [Defendants] and the alleged protected conduct of Plaintiff[s]."  (Defs.' Mot. 4:8-9.) Plaintiffs counter the searches were conducted in retaliation for Plaintiffs filing an earlier lawsuit.  Specifically, Plaintiffs argue "the inspections were in retaliation for [Plaintiffs'] exercise of [their] First Amendment rights [when they filed] a civil lawsuit against the City and defendant Goyer for their unjustified and warrantless forced evacuations of the entire building on or about June 29, 2006 [in] Walnut Hill Estate Enterprises, LLC [] v. City of Oroville [], action no. 2:08-CV-1142-FCD-GGH ["the 2008 Action"]." (Opp'n 6:12-15.)

> [A] plaintiff alleging retaliation for the exercise of [a] constitutionally protected right[] must initially show that the protected conduct was a 'substantial' or 'motivating' factor in the defendant's decision . . . .  At that point, the burden shifts to the defendant to establish that it would have reached the same decision even in the absence of the protected conduct.

1  Soranno's Gasco v. Morgan, 874 F.2d 1310, 1314 (9th Cir. 1989) (citing

2  Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287

3  (1977)).

4        Plaintiffs argue "within a few months of [Plaintiffs] filing

5  [the 2008 Action], the City initiated 'searches' in December 2008."

6  (Opp'n 6:21-22.)  Plaintiffs filed the 2008 Action on May 23, 2008,

7  nearly seven months before December 16, 2008, the date which Gail,

8  Goyers, and Bowers discovered the health and safety code violations

9  which provided the basis for the January 7, 2009 inspection warrant.

10 The 2008 Action concerned the City's evacuation of the Oroville Inn in

11 June 2006 following the discovery of health and safety code

12 violations.  (Benefield Decl. ¶ 8.)  Plaintiffs offer the declaration

13 of Jonothan Benefield in support of their retaliation claim, in which

14 Benefield avers that although he "had numerous meetings and/or

15 discussions with David Goyer and the City and ha[s] allowed various

16 specific inspections at the property" between the June 2006 evacuation

17 and December 2008, "this was the first attempt by Mr. Goyer to inspect

18 the property after the filing of [the 2008 Action]." (Id. ¶ 15.)  The

19 averments in Benefield's declaration do not support Plaintiffs'

20 argument that the filing of the 2008 Action was "a 'substantial' or

21 'motivating' factor in the defendant[s'] decision" to inspect the

22 Oroville Inn in December 2008.  Soranno's, 874 F.2d at 1314.

23 Plaintiffs also present the declaration of James Carpenter in support

24 of their retaliation claim.  Carpenter declares he sought an occupancy

25 permit from the City of Oroville after he reached an agreement to

26 lease "the premises" in the Oroville Inn, concerning which the City

27 "scheduled an inspection of the proposed lease premises at the

28 Oroville Inn for August 26, 2009." (Carpenter Decl. ¶¶ 1,2.)

Carpenter also declares that Michael Cully informed Carpenter he would not perform any inspection "of the proposed leased premises" "due to an ongoing investigation regarding the Oroville Inn and due to litigation by the owners of Oroville Inn against the City of Oroville." (Id. ¶ 4.) Carpenter further declares "[Cully] presented [him] with the form attached hereto, and left the premises." (Id.) However, there is no form attached to Carpenter's declaration. Finally, Carpenter avers Paula Atteberry encouraged him to rent somewhere other than the Oroville Inn. (Id. ¶ 6.) The individuals mentioned in Carpenter's declaration, Cully and Atteberry, are not mentioned in Plaintiffs' Opposition brief or in Benefield's declaration, and it is unclear how they relate to this lawsuit. The inspection searches had been conducted when Carpenter sought an occupancy permit from the City, and Carpenter's declaration does not reference the 2008 Action or otherwise support Plaintiffs' retaliation claim. Therefore, Defendants' motion for summary judgment on Plaintiffs' retaliation claims is granted.

**C.   Procedural Due Process Claim**

Defendants also seek summary judgment on Plaintiffs' procedural due process claim, arguing "Plaintiffs[] received all of the process they were due." (Defs.' Mot. 5:16.) Plaintiffs rejoin, arguing their "Due Process rights were violated when the City issued the 'Notice to Repair or Demolish' without [providing Plaintiffs with] notice and an opportunity to be heard" before the Notice was issued. (Opp'n 10:19-21.)

"A procedural due process claim hinges on proof of two elements: (1) a protectible liberty or property interest . . .; and (2) a denial of adequate procedural protections. Property interests

are not created by the Constitution but by existing rules or understandings that stem from an independent source such as state law . . . ."  Thornton v. City of St. Helens, 425 F.3d 1158, 1164 (9th Cir. 2005) (citations and quotes omitted).  Plaintiffs have not pointed to any California law requiring a hearing prior to the issuance of a "Notice of Repair or Demolish."  The Notice in this case was issued under California Health and Safety Code section 17980, which requires only that "[w]henever the enforcement agency has . . . determined that [a] building is [] substandard . . . [t]he owner shall have the choice of repairing or demolishing."  Cal. Health and Safety Code § 17980(b).  The Owners and tenants were each given a "Notice to Repair or Demolish Substandard Building" on April 22, 2010, which stated, "[t]he building official has determined that the buildings must either be repaired or demolished, the option is yours."  (Moore Decl. ¶ 7, Ex. 2; SUF ¶ 11.)

Plaintiffs have not provided the procedural protections to which they contend they were entitled before the City issued the Notice.  Both parties submitted evidence that Plaintiffs *were* provided a hearing before the Oroville City Council in October 2009 after Plaintiffs failed to comply with the "Notice to Repair or Demolish." During this October 2009 hearing Benefield and his attorney presented evidence and arguments before the City Council.  (Moore Decl. Ex. 3; Benefield Decl. Ex. 1 (City Council Resolution No. 7458 showing that Plaintiffs were notified of the hearing during which the City Council "would consider adopting a resolution declaring the substandard housing conditions at the Property to be a public nuisance, and ordering abatement of the nuisance").)  However, Plaintiffs have failed to discuss this hearing in the arguments contained in their

Opposition brief, and have not shown any basis for their contention that they were entitled to more process than what they have been given.  Further, to the extent Plaintiffs premise their procedural due process claim on the searches, they have failed to raise a genuine issue of material fact concerning the validity of any search.  For the stated reasons, Defendants' motion for summary judgment on Plaintiffs' procedural due process claim is granted.

**D.  Substantive Due Process Claim**

Defendants also seek summary judgment on Plaintiffs' substantive due process claim, arguing that "enforcing [the Health and Safety] codes advances a legitimate government purpose."  (Mot. 7:2-3.)  Plaintiffs rejoin, arguing Defendants engaged in "capricious and abusive code enforcement activities . . . which . . . shock the conscience of any believer in the rule of law."  (Opp'n 14:4-6.)

"[T]he irreducible minimum of a substantive due process claim challenging land use action is failure to advance any legitimate governmental purpose."  Shanks v. Dressel, 540 F.3d 1082, 1088 (9th Cir. 2008).  When challenging a municipality's land use action, a plaintiff must show that the "governmental deprivation of [the] [protected] interest . . . rises to the level of the constitutionally arbitrary."  Id. (emphasis omitted).  "[O]nly egregious official conduct can be said to be arbitrary in the constitutional sense."  Id. (quotations omitted).  Here, the uncontroverted evidence shows that Defendants' enforcement of the California Health and Safety Code is rationally related to the City's legitimate governmental interest in preserving the public health and safety.  See Armendariz v. Penman, 75 F.3d 1311, 1328 (9th Cir. 1996) ("The City has an obvious interest in preventing safety and sanitation hazards by enforcing the housing

code."), overruled on other grounds by <u>Crown Point Dev., Inc. v. City of Sun Valley</u>, 506 F.3d 851, 856-57 (9th Cir. 2007); <u>see also</u> <u>Camara</u>, 387 U.S. at 535 (discussing the "reasonable goals of code enforcement" including "[t]he primary governmental interest . . . to prevent even the unintentional development of conditions which are hazardous to the public health and safety").  Therefore, Defendants' motion for summary judgment on Plaintiffs' substantive due process claim is granted.

**E.  Takings Claim**

Defendants also seek dismissal of Plaintiffs' takings claim, stating in their motion: "Counsel for the parties have stipulated that Plaintiffs are not pursuing a takings claim.  As such, that claim will not be addressed here and should be dismissed."  (Mot. 7:21-23.) Plaintiffs do not oppose dismissal of this claim in their Opposition brief.  Further, both parties present evidence that a hearing was held before the Oroville City Council in October 2009 on the "Notice to Repair or Demolish."  This hearing indicates that the "Notice to Repair or Demolish" was not a final administrative action.  "[A] two-step analysis [is involved in] determin[ing] whether a regulatory takings claim is ripe: (1) the underlying 'administrative action must be final before it is judicially reviewable'[;] and (2) the claimant must have 'unsuccessfully attempted to obtain just compensation through the procedures provided by the State.'"  <u>Equity Lifestyle Props., Inc. v. Cnty. of San Luis Obispo</u>, 548 F.3d 1184, 1190 (9th Cir. 2008) (quoting <u>Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City</u>, 473 U.S. 172, 192, 195 (1985)).  Since Plaintiffs have not shown that their takings claim is ripe for review, their takings claim is dismissed.

**F.  Monell Liability**

Defendants also seek summary judgment on Plaintiffs' claims against the City of Oroville, arguing under <u>Monell v. Department of Social Services</u>, 436 U.S. 658 (1978), Plaintiffs have failed to identify "an unconstitutional policy, practice, or custom." (Mot. 8:2-3.)  Plaintiffs respond, arguing the "Notice of Substandard Housing," the inspection searches, and the "Notice of Repair or Demolish" constitute "official polic[ies] . . . ratified by the City." (Opp'n 9:19-28.)  However, Plaintiffs have not shown that a City official violated their constitutional rights.  "If no constitutional violation occurred, the municipality cannot be held liable and whether 'the [City's official policies] . . . might have authorized the [challenged actions] is quite beside the point.'"  <u>Long v. City and Cnty. of Honolulu</u>, 511 F.3d 901, 907 (9th Cir. 2007), cert. denied, --U.S. ---, 129 S. Ct. 62 (2008) (quoting <u>City of Los Angeles v. Heller</u>, 475 U.S. 796, 799 (1986)).  Therefore, Defendants' motion for summary judgment on Plaintiffs' claims against the City of Oroville is granted.

**G.  Dismissal of Plaintiffs' Writ claim under 28 U.S.C §.1367(c)**

Plaintiffs seek in their only remaining claim a writ of mandate under California Code of Civil Procedure section 1094.5, in which Plaintiffs request various relief.  Plaintiffs section 1094.5 "claim for a writ of mandate is a state law claim." <u>Pac. Bell Tel. Co. v. City of Walnut Creek</u>, 428 F. Supp. 2d 1037, 1055 n.6 (N.D. Cal. 2006).  The claim remains a state law claim even though "the asserted bases for issuance of [the] writ are the City's alleged violations of both federal and state law . . . ." <u>Id.</u>  However, since Defendants' summary judgment motion has been granted on all of Plaintiffs' federal

15

claims, the Court may sua sponte decide whether to continue exercising
supplemental jurisdiction over Plaintiffs' remaining state claim.  <u>See</u>
<u>Acri v. Varian Assocs., Inc.</u>, 114 F.3d 999, 1001 n.3 (9th Cir. 1997)
(en banc) (suggesting that a district court may, but need not, sua
sponte decide whether to continue exercising supplemental jurisdiction
under 28 U.S.C. § 1367(c)(3) after all federal law claims have been
dismissed).

        Under 28 U.S.C. § 1367(c)(3), a district court "may decline
to exercise supplemental jurisdiction over a [state law] claim" when
"all claims over which it has original jurisdiction" have been
dismissed.  "While discretion to decline to exercise supplemental
jurisdiction over state law claims is triggered by the presence of one
of the conditions in § 1367(c), it is informed by the . . . values of
economy, convenience, fairness, and comity."  <u>Acri</u>, 114 F.3d at 1001
(quotations omitted).  "In the usual case in which all federal-law
claims are eliminated before trial, the balance of [the] factors to be
considered . . . point toward declining to exercise jurisdiction over
the remaining state-law claims."  <u>United Mine Workers of Am. v. Gibbs</u>,
383 U.S. 715, 726 (1966).  "Further, primary responsibility for
developing and applying state law rests with the state courts."
<u>Curiel v. Barclays Capital Real Estate Inc.</u>, No. S-09-3074 FCD/KJM,
2010 WL 729499, at *1 (E.D. Cal. Mar. 2, 2010).  Since none of the
<u>Gibbs</u> factors weigh against dismissal, Plaintiffs' remaining state
claim will be dismissed under 28 U.S.C. § 1367(c)(3).

                    **IV.  Conclusion**

        For the stated reasons, Defendants' summary judgment motion
is granted on Plaintiffs' Fourth Amendment, procedural due process,
substantive due process, and <u>Monell</u> claims.  Judgment shall be entered

16

in favor of Defendants on these claims.  Further, Plaintiffs' takings claim is dismissed.  Lastly, Plaintiffs' state claim for a writ of mandate under California Code of Civil Procedure section 1094.5 is dismissed under 28 U.S.C. § 1367(c)(3).  The Clerk of Court shall close this case.

Dated:  July 21, 2010

_____
GARLAND E. BURRELL, JR.
United States District Judge